UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CHAEHYUN LIM a/k/a CHAE HYUN LIM and
DONG GYU NOH,

                      Plaintiffs,

                -against-

AY CREATIVE, INC. d/b/a AY STUDY,
JOHN PARK a/k/a YOHAN PARK,
ANDREW KOH a/k/a KYOUNG-WOOK KOH,
and DOES 1 through 50, inclusive,

                      Defendants.

------------------------------------------------------------x

Civil Action No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, CHAEHYUN LIM a/k/a CHAE HYUN LIM and DONG GYU NOH (collectively, "Plaintiffs"), by and through their attorneys, AHNE & JI, LLP, bring this action against Defendants AY CREATIVE, INC. d/b/a AY STUDY, JOHN PARK a/k/a YOHAN PARK, ANDREW KOH a/k/a KYOUNG-WOOK KOH, and DOES 1 through 50, inclusive (hereinafter, collectively referred to as "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      AY CREATIVE, INC. d/b/a AY STUDY, and its principals, JOHN PARK a/k/a YOHAN PARK and ANDREW KOH a/k/a KYOUNG-WOOK KOH, who market themselves as professional education and study abroad consultants, engaged in fraudulent, deceptive activities and deceived Plaintiffs by providing forged, fake immigration documents, including, but not limited to, I-20s[1], and various schools' acceptance letters, apology letters, scholarship agreements, and emails, inducing Plaintiffs to believe that they were admitted to a graduate school program.

---

[1] The I-20 is a multi-purpose document issued by a government-approved, U.S. educational institution certifying that a person has been admitted to a full-time program of study, and have also demonstrated sufficient financial resources to stay in the U.S. The I-20 is officially titled the "Certificate of Eligibility" because with it, the person is "eligible" to apply for an F-1 student visa at a U.S. Embassy or consulate abroad. After a school completes their admissions process, the admitted students' names and other biographic information are entered into a U.S. government database

2.      Defendants, on multiple occasions, falsely represented that Plaintiffs were admitted to a graduate school program of various schools and that their immigration status has been properly maintained.

3.      In doing so, Defendants not only created and disseminated counterfeited, fake immigration documents, inducing Plaintiffs to believe that their immigration status in the U.S. has been maintained as an international student, but also created and disseminated forged, fake school acceptance letters, apology letters, scholarship agreements, and emails as if those letters and emails were originated from various different schools' admissions offices, such as Pace University, Mercy University, Monroe College, and Arizona State University, on multiple occasions, inducing Plaintiffs to believe that they were admitted to said schools' graduate school program(s) as full-time students.

4.      Relying on these representations, Plaintiffs spent a substantial amount of money entering and remaining in the U.S., getting ready to launch their academic career, and paying the required fees imposed by Defendants.

5.      Despite the fact that Plaintiffs provided all the required documents and information at the direction of Defendants, such as their resumes, financial verification documents, undergraduate academic records, passport, and all other required documents and information, Plaintiffs later discovered that the immigration documents provided by Defendants were counterfeited, fake documents, jeopardizing Plaintiffs' immigration status in the U.S., and that they

---

called SEVIS (Student and Exchange Visitor Information System).  The SEVIS database processes the information and produces a "PDF" file of the I-20 that is sent back to the school via the internet.  The school official, called the Designated School Official or DSO, prints and signs the I-20 and then delivers it to the student. *See* https://studyinthestates.dhs.gov/schools/report/dsos-and-the-form-i-20.

were never admitted to a graduate school program at any of the colleges or universities mentioned above.

6.      When Plaintiffs contacted Pace University, Mercy University, Monroe College, and Arizona State University, those schools informed Plaintiffs that they had no records of Plaintiffs ever getting admitted to their graduate school programs and that they never issued acceptance letters and I-20s to Plaintiffs.

7.      Those schools confirmed that the I-20s and acceptance letters that Defendants provided to Plaintiffs were all counterfeited, fake documents, as they never issued such documents.

8.      Due to Defendants' pattern of fraudulent, deceptive conduct and behavior, Plaintiffs were not able to get admitted to their graduate school program(s) and wasted their valuable time and money, and their legal immigration status in the U.S. has been jeopardized.

9.      This situation left Plaintiffs financially depleted, emotionally distressed, and angry, looking for answers and accountability.

10.     Plaintiffs wasted their valuable time and money in pursuit of an education that turned out to be fraud and deception by Defendants.

11.     As a direct and proximate result of Defendants' fraudulent, deceptive activities and business practices, Plaintiffs have suffered, and continue to suffer, severe emotional distress, as Defendants have interrupted their lives, stalled their educational development, and abused the trust of Plaintiffs seeking to launch their career.

12.     Plaintiffs thus bring the instant action, asserting claims based upon Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1964(c), 1962(c) & (d); fraudulent inducement; fraudulent concealment; and aiding and abetting fraud.

13.    Plaintiffs seek damages and equitable relief, which relief includes, but not limited to, the following: reimbursing all of Plaintiffs' expenses incurred for having to remain in the U.S. and getting ready to attend their graduate school program(s), fees paid to Defendants, and costs and expenses incurred to rectify the issues pertaining to their legal immigration status in the U.S.; punitive damages; treble damages under the Racketeer Influenced and Corrupt Organizations Act of 1970; costs, expenses, and disbursements, including attorneys' fees and expert fees; and any additional relief that this Court deems just, proper, and equitable necessary to provide complete relief to Plaintiffs.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action because it arises under the laws of the United States, 28 U.S.C. §§ 1331, 1337, and 1343, and more particularly, the instant action arises under an Act of Congress, namely, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c). *See* 18 U.S.C. § 1964.

15.    This Court has supplemental jurisdiction over Plaintiffs' claims brought under the laws of the State of New York pursuant to 28 U.S.C. § 1367, as they arise from the common nucleus of operative facts.

16.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events set forth in this Complaint occurred within this District.

## PARTIES

17.    Plaintiff CHAEHYUN LIM a/k/a CHAE HYUN LIM ("Mr. Lim") is an individual, who entered the United States as an International Student, holding F-1 International Student Visa, currently residing in New York County, New York.

4

18.     Plaintiff DONG GYU NOH ("Mr. Noh") is an individual, who entered the United States as an International Student, holding F-1 International Student Visa, currently residing in Bergen County, New Jersey.

19.     Upon information and belief, Defendant AY CREATIVE, INC. d/b/a AY STUDY ("AY Study") was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York.

20.     Upon information and belief, AY Study has its principal executive office at 261 West 35th Street, Suite 602, New York, NY 10001.

21.     Upon information and belief, AY Study conducted and carried on, and still conducts and carries on, business in the State of New York.

22.     Upon information and belief, AY Study transacted, and still transacts, business within the State of New York.

23.     Upon information and belief, AY Study derived, and still derives, a substantial amount of revenue from goods used or consumed or services rendered in the State of New York.

24.     Upon information and belief, AY Study expected or should have reasonably expected its acts to have consequences in the State of New York.

25.     Upon information and belief, AY Study has been maintaining, and still maintains, continuous and systematic contacts with, and within, the State of New York, and it regularly conducts business in the State of New York.

26.     Upon information and belief, AY Study provides language training school consultation, study abroad consultation, education consultation, scholarship consultation, school admission support, I-20 and visa issuance, tuition remittance, dormitory support, and local

orientation support services to international students who wish to attend schools in the United States for the purpose of studying abroad.

27.    AY Study markets itself as a professional education consultant on its online website by stating that it "is doing its best to serve as a faithful guide responsible for the future of students through 16 years of professional knowledge, information, and experience, and always provides guidance that thinks and considers from the student's perspective and situation," "AY Study's goal is to make student's dreams a reality…," and it "provides the best results through all of [] [its] experience, knowledge, and network," and that "[t]hrough 16 years of study abroad consulting experience and the latest local information, [] [it] provide[s] a list of the best schools by identifying the student's situation and conditions among numerous schools, including 300 language schools and 4,500 2-year and 4-year universities and graduate schools." *See* https://aystudy.com/about-us/service/.

28.    AY Study further markets itself as a professional education consultant on its online website by stating that it "provide[s] professional study abroad consulting that looks at not only the student's current situation and conditions, but also the 10 years ahead, including academics, advancement, internship, and entry into society." *Id*.

29.    Upon information and belief, one of the main services that AY Study provides is "application writing services so that students can focus on their studies and necessary exams." *Id*.

30.    That is, by imposing certain fees, Defendants provide services for students, who wish to study in the U.S., such as providing consultation services, assisting students for application process, providing assistance for essay writing, review, and edit, submitting applications to schools on behalf of students, submitting additional documents and information to schools on behalf of

students, providing acceptance letters and notices to students, providing admission support, administering I-20 and visa issuances, and providing dormitory support. *Id*.

31.    Upon information and belief, Defendant JOHN PARK a/k/a YOHAN PARK ("Defendant Park" or "Mr. Park") is an individual residing in Bergen County, New Jersey.

32.    Upon information and belief, Mr. Park was and still is an officer, director, shareholder, president, member, and/or managing member of AY Study.

33.    Upon information and belief, Defendant ANDREW KOH a/k/a KYOUNG-WOOK KOH ("Defendant Koh" or "Mr. Koh") is an individual residing in Queens County, New York.

34.    Upon information and belief, Mr. Koh was and still is an officer, director, shareholder, president, member, general manager, and/or managing member of AY Study.

35.    Upon information and belief, Defendant Park and Defendant Koh formed AY Study together as shareholders.

36.    Upon information and belief, Defendant Park hired Defendant Koh as a general manager of AY Study.

37.    Upon information and belief, there existed, or still exists, a partnership agreement between Defendant Park and Defendant Koh.

38.    Upon information and belief, Defendant Park and Defendant Koh acted in concert with each other, as officers, directors, shareholders, members, and/or managing members of AY Study, in order to defraud Plaintiffs and for the purpose of defrauding Plaintiffs.

## FACTUAL ALLEGATIONS

### Plaintiff Chaehyun Lim a/k/a Chae Hyun Lim

39.    In or about November 2022, Mr. Lim contacted AY Study in order to have a consultation regarding his anticipated study abroad program at a university in the U.S. for his graduate school program.

40.    Mr. Lim corresponded and met with Defendant Park and Defendant Koh on multiple occasions and discussed his eligibility for admission to a graduate school program in New York.

41.    At Defendants' direction, Mr. Lim provided all the required documents and information, such as his resume, financial verification documents, undergraduate academic records, passport, and all other required documents and information, including the service fees imposed by Defendants, necessary for completion of his application process and submission.

42.    In or about January 2023, Defendant Park informed Mr. Lim that his application for a graduate school program at Pace University for the Spring 2023 semester was rejected and provided a purported rejection letter from Pace University.

43.    Defendant Park represented that the number of students for the Spring 2023 semester exceeded the number of allowable students for that semester, and that is the reason that Mr. Lim's application was rejected.

44.    Defendant Park falsely represented that Mr. Lim got admitted to Pace University's ESL (English as Second Language) program for the Fall 2023 semester and provided a purported acceptance letter from Pace University to Mr. Lim via Kakaotalk Messenger chat platform ("Kakaotalk")[2] on or about April 14, 2023, at or around 14:10.

---

[2] Kakaotalk is a mobile messaging app for smartphones operated by Kakao Corporation.  It was launched on March 18, 2010, and it is available on mobile and desktop platforms.  Kakaotalk provides free calling and messaging services.

45.    Relying on Defendant Park's representation that he got admitted to Pace University's ESL program, Mr. Lim materially changed his position by moving to the U.S. in or about August 2023, signing a lease agreement for his apartment in Manhattan, New York, purchasing school materials and supplies for the upcoming semester, and getting ready to attend his ESL program.

46.    Subsequently, Defendant Park falsely represented that Pace University was having some internal network issues, and for that reason, Pace University advised Defendant Park that it had changed the orientation date.

47.    Defendant Park advised Mr. Lim that he should be enrolled in a language program provided by an entity, named, New York General Consulting, in order to maintain his immigration status as an F-1 International Student while Mr. Lim's attendance at Pace University's ESL program and applications for graduate school programs are pending.

48.    In accordance with Defendant Park's direction, Mr. Lim was enrolled in a language program with New York General Consulting.

49.    On or about August 25, 2023, at or around 13:56, Defendant Park provided Pace University's purported portal link to Mr. Lim via Kakaotalk.  On that same day, Defendant Park also provided Pace University's purported orientation notice to Mr. Lim at or around 17:04, falsely representing that the orientation was scheduled for August 30, 2023.

50.    On or about August 29, 2023, at or around 14:52, Defendant Park provided Pace University's purported orientation date change notice to Mr. Lim via Kakaotalk, falsely representing that the orientation date has been changed from August 30, 2023 to August 31, 2023.

---

Like most of its type, the use is able to share photos, videos, voice messages, locations, webpage links, and contact information.  Users are able to create one-on-one conversations, as well as group chats with no limit on users. https://www.kakaocorp.com/page/service/service/KakaoTalk?lang=en.

51.     On or about August 31, 2023, at or around 14:12, Defendant Park once again provided Pace University's purported orientation date change notice to Mr. Lim via Kakaotalk, falsely representing that Pace University has changed the orientation date from August 31, 2023 to September 5, 2023.

52.     On or about September 5, 2023, at or around 12:14, Defendant Park once again provided Pace University's purported orientation date change notice to Mr. Lim via Kakaotalk, falsely representing that Pace University has changed the orientation date from September 5, 2023 to September 6, 2023.

53.     On or about September 6, 2023, at or around 12:09, Defendant Park once again provided Pace University's purported orientation date change notice to Mr. Lim via Kakaotalk, falsely representing that Pace University has changed the orientation date from September 6, 2023 to September 11, 2023.

54.     On or about September 7, 2023, at or around 10:05, Defendant Park once again provided Pace University's purported orientation date change notice to Mr. Lim via Kakaotalk, falsely representing that Pace University has decided to push-back the start date of the program to September 11, 2023.

55.     On or about September 11, 2023, at or around 10:04, Defendant Park once again provided Pace University's purported orientation date change notice to Mr. Lim via Kakaotalk, falsely representing that his course registration should be done on September 12, 2023.

56.     Each time, Defendant Park represented via Kakaotalk that Pace University was having some internal network issues, and for that reason, Pace University has been changing date(s) for its orientation.

57.    Acting in concert with Defendant Park, on or about September 18, 2023, at or around 16:00, Defendant Koh provided Mr. Lim's I-20 purportedly issued by Pace University via Kakaotalk.

58.    On or about November 9, 2023, at or around 15:07, Mr. Lim requested via Kakaotalk that Mr. Koh provide all email correspondences between Defendant Park and Defendant Koh, on one hand, and Pace University, on the other, to ascertain the reason(s) that Pace University kept pushing back the orientation date and start date for Mr. Lim's anticipated ESL program for the Fall 2023 semester.

59.    Acting in concert with Defendant Park, on or about November 13, 2023, at or around 12:54, Defendant Koh provided Pace University's purported Zoom meeting invitation link for the Fall 2023 semester orientation to Mr. Lim via Kakaotalk.

60.    The purported Zoom meeting invitation Defendant Koh provided to Mr. Lim stated that Pace University's Fall2 Orientation has been scheduled for November 14, 2023, at 2:00 p.m., ET.

61.    Later that same day, at or around 14:00, Defendant Koh falsely represented, via Kakaotalk, that the date he sent to Mr. Lim was wrong.

62.    Acting in concert with Defendant Park, on or about November 16, 2023, at or around 15:47, Defendant Koh forwarded the purported email correspondences between Defendant Park and Defendant Koh, on one hand, and Pace University's ESL program office, on the other, to Mr. Lim via email representing that Defendants have been trying to obtain Mr. Lim's I-20 from Pace University for his ESL program and that Pace University kept changing the orientation date(s).

63.    In the November 16, 2023 email from Defendant Koh to Mr. Lim, Defendant Koh falsely represented that he has communicated with Pace University on the phone multiple times

and exchanged information and that the contents of the purported email correspondences were between Defendant Park and Defendant Koh, on one hand, and Pace University, on the other.

64.     In the November 16, 2023 purported email correspondence provided by Defendant Koh, Pace University purportedly claimed that it was having sporadic network issues, and for that reason, the orientation date had to be changed on multiple occasions.

65.     In the November 16, 2023 purported email correspondence provided by Defendant Koh, Pace University purportedly claimed that due to its network issues, Pace University's issuance of Mr. Lim's I-20 has been delayed.

66.     On or about November 18, 2023, at or around 15:04, Defendant Koh falsely represented, via Kakaotalk, that he has spoken with Pace University regarding purported compensation to Mr. Lim due to Pace University's delay.

67.     On or about November 20, 2023, at or around 17:21, Defendant Koh falsely represented, via Kakaotalk, that Pace University made an offer of $10,000.00 to Mr. Lim to compensate him for not being able to attend the Fall 2023 semester ESL program.

68.     Mr. Lim could not attend his ESL program for the Fall 2023 semester at Pace University.

69.     With respect to Mr. Lim's purported admission to Pace University's MBA program for the Spring 2024 semester, in or about September 2023, Defendant Koh informed Mr. Lim that he got admitted to Pace University, Lubin School of Business, MBA in Business Analytics program, for the Spring 2024 semester, and provided a purported conditional acceptance letter, dated September 28, 2023, and provided another purported acceptance letter, dated November 20, 2023, in or around November 2023, purportedly originated from Pace University.

70.     Defendant Koh not only provided the purported acceptance letters from Pace University, but also provided Pace University's purported scholarship agreements and I-20 purportedly issued by Pace University.

71.     On or about September 18, 2023, at or around 16:00, Defendant Koh provided Mr. Lim's I-20 purportedly issued by Pace University to Mr. Lim via Kakaotalk, falsely representing that Pace University has issued Mr. Lim's I-20 for the Spring 2024 semester.

72.     On or about September 28, 2023, at or around 12:03, Defendant Koh provided Pace University's purported acceptance letter to Mr. Lim via Kakaotalk, falsely representing that Mr. Lim got admitted to Pace University's graduate school program for the Spring 2024 semester.

73.     On or about October 16, 2023, at or around 13:20, Defendant Koh provided Pace University's purported Zoom meeting with advisor information to Mr. Lim via Kakaotalk.

74.     On or about November 3, 2023, at or around 11:13, Defendant Koh provided Pace University's purported email stating orientation date, time, and location.

75.     On or about November 3, 2023, at or around 15:33, Defendant Koh provided Pace University's purported scheduling link to Mr. Lim via Kakaotalk.

76.     On or about November 13, 2023, at or around 12:54, Defendant Koh provided Pace University's purported updated Zoom meeting with advisor information to Mr. Lim via Kakaotalk.

77.     On or about November 20, 2023, at or around 17:22, Defendant Koh provided Pace University's purported updated acceptance letter to Mr. Lim via Kakaotalk.

78.     On or about December 7, 2023, at or around 15:00, Defendant Koh provided Pace University's purported student graduate scholarship agreement to Mr. Lim via Kakaotalk.

79.     Defendant Koh falsely represented that Mr. Lim's I-20 was properly transferred from New York General Consulting to Pace University.

80.    On or about December 7, 2023, at or around 15:00, Defendant Koh falsely represented that he received a scholarship agreement from Pace University and provided the purported scholarship agreement to Mr. Lim via Kakotalk.

81.    On or about December 22, 2023, at or around 12:45, Defendant Koh sent an email to Mr. Lim containing Pace University's purported student portal information, registration and tuition payment information, immunization requirements, professor's information, and course information.

82.    On or about December 26, 2023, at or around 16:25, Defendant Koh falsely represented, via Kakaotalk, that he received an email from Pace University stating that it was having network issues and that once it is repaired, Mr. Lim would be able to access his student portal account.

83.    On or about January 4, 2024, at or around 13:14, Defendant Koh falsely represented, via Kakaotalk, that he received an email from Pace University stating that new portal login information will be created and sent to Mr. Lim shortly.

84.    On or about January 5, 2024, at or around 16:29, Defendant Koh falsely represented, via Kakaotalk, that Mr. Lim's I-20 will be issued by Pace University by the coming Monday.

85.    On or about January 5, 2024, at or around 18:22, Defendant Koh falsely represented, via Kakaotalk, that the user account for Mr. Lim will be activated and ready for use on January 8, 2024.

86.    On or about January 9, 2024, at or around 14:32, Defendant Koh, via Kakaotalk, provided Pace University's purported portal login link and link to obtain I-20, and he falsely represented that an information session has been scheduled for January 17, 2024.

87.    Mr. Lim tried to access the link and log into the account, but he could not access any of the links provided by Defendant Koh.

88.    On or about January 20, 2024, at or around 21:51, Defendant Koh, via Kakaotalk, provided purported login credentials to Mr. Lim's student portal account and falsely represented that Pace University's network system will be activated by the coming Monday and that Mr. Lim should be able to have access it.

89.    On January 22, 2024, Mr. Lim tried to access his student portal account, but he could not access it.

90.    On or about January 27, 2024, at or around 6:13, Defendant Koh sent an email to Mr. Lim regarding Pace University's purported letter directing registration and payment of tuition.

91.    Relying on Defendant Koh' representation that he got admitted to Pace University's MBA program, Mr. Lim materially changed his position by purchasing school materials and supplies for the upcoming semester and getting ready to attend his graduate school program.

92.    On or about February 6, 2024, at or around 17:05, Defendant Koh all of sudden informed Mr. Lim that his enrollment in Pace University's MBA program had some issues and that he would not be able to attend the Spring 2024 semester at Pace University and provided a purported apology letter from Pace University, dated January 26, 2024, via Kakaotalk.

93.    Said letter states that "[w]e would like to apologize for the delay in the start of your Spring 2024 semester.  We had some unforeseen issues with our internal systems and would like to sincerely apologize for the delay.  We would like to extend our apologies by offering a $1,500 credit good for your next semester here at Pace University."

94.    Defendant Koh falsely represented that because Pace University breached the partnership agreement with AY Study by not resolving the issues pertaining to Mr. Lim not being

able to attend the Spring 2024 semester, and for that reason, Defendants filed a lawsuit against Pace University.

95.    Defendant Koh provided a copy of the purported complaint filed against Pace University, and other purported legal documents, such as power of attorney, representing that an attorney, named, Edmond Wong, Esq. of Edmond Wong, PLLC, filed a lawsuit on behalf of Defendants against Pace University.

96.    On or about April 29, 2024, at or around 17:01, Defendant Koh provided the purported complaint Defendants filed against Pace University to Mr. Lim via Kakaotalk.

97.    On or about May 1, 2024, at or around 10:17, Defendant Koh provided the purported complaint Defendants filed against Pace University, as well as other legal documents, such as power of attorney, to Mr. Lim via Kakotalk, falsely representing that Defendants have filed a lawsuit against Pace University.

98.    Mr. Lim could not attend his graduate school program for the Spring 2024 semester at Pace University.

99.    On or about February 6, 2024, at or around 17:05, Defendant Koh provided a letter written under the name of AY Study, to Mr. Lim, via Kakaotalk, stating that "[d]ue to the unfortunate circumstances with Pace University, we have decided to stop all operations with the university" and that AY Study will provide "[c]ompensation from Pace University lawsuit… upon conclusion of [the] lawsuit."

100.    On or about February 8, 2024, at or around 17:09, Defendant Koh falsely represented that Mr. Lim got admitted to Mercy University and provided a purported acceptance letter, dated February 8, 2024, via Kakaotalk.

101.    Defendant Koh not only provided the purported acceptance letter, but also provided I-20 purportedly issued by Mercy University.

102.    On or about February 9, 2024, at or around 16:16, Defendant Koh falsely represented, via Kakaotalk, that Mr. Lim's I-20 has been transferred to Mercy University.

103.    On or about February 20, 2024, at or around 15:48, Defendant Koh, via Kakaotalk, provided Mercy University's purported student portal information to Mr. Lim and falsely represented that Mr. Lim will be able to access the portal on February 21, 2024, at noon, and that Mr. Lim will be able to register for classes and retrieve his I-20.

104.    On February 21, 2024, Mr. Lim tried to access the student portal, but he was unable to access it.

105.    On or about February 28, 2024, at or around 21:13, Defendant Koh, via Kakaotalk, provided Mercy University's purported Zoom meeting information to Mr. Lim.

106.    On or about February 29, 2024, at or around 14:28, Defendant Koh, via Kakaotalk, falsely represented to Mr. Lim that Mercy University has issued Mr. Lim's I-20.

107.    On or about March 7, 2024, at or around 17:57, Defendant Koh provided Mercy University's purported updated Zoom meeting information to Mr. Lim via Kakaotalk.

108.    On or about March 8, 2024, at or around 16:30, Defendant Koh provided Mercy University's purported updated Zoom meeting information to Mr. Lim via Kakaotalk.

109.    On or about March 11, 2024, at or around 11:24, Defendant Koh provided Mercy University's scholarship and compensation information to Mr. Lim via Kakaotalk.

110.    On or about March 17, 2024, at or around 9:55, Defendant Koh provided Mercy University's updated Zoom meeting information to Mr. Lim via Kakaotalk.

111.    On or about March 18, 2024, at or around 11:53, Defendant Koh, via Kakaotalk, provided Mr. Lim's I-20 and scholarship/compensation award letter purportedly issued by Mercy University to Mr. Lim.

112.    Subsequently, Defendant Koh once again falsely represented to Mr. Lim that his enrollment in Mercy University had some issues, and he would not be able to attend said program at Mercy University and provided a purported letter from Mercy University.

113.    Said letter offers full tuition scholarship and $5,000.00 additional compensation for delayed semester start for the Spring 2024 semester and full-time scholarship and $10,000.00 compensation for the Fall 2024 semester.

114.    Said letter further states that "[o]nce again, on behalf of Mercy University, we apologize for the inconveniences caused.  While ideally, we would've wished for a smooth start, sometimes a rough journey can pave the way for a smoother path in the future."

115.    Mr. Lim could not attend his graduate school program for the Spring 2024 semester at Mercy University.

116.    On or about March 20, 2024, at or around 19:20, Defendant Koh, via Kakaotalk, falsely represented that Monroe College will issue Mr. Lim's I-20 the next day.

117.    On or about March 28, 2024, at or around 16:26, Defendant Koh, via Kakaotalk, falsely represented that Mr. Lim got admitted to the Master of Business Administration program at the King Graduate School of Monroe College for the Spring 2024 semester and provided a purported acceptance letter from Monroe College, dated March 27, 2024.

118.    On or about April 1, 2024, at or around 17:40, Defendant Koh provided Mr. Lim's I-20 purportedly issued by Monroe College to Mr. Lim via Kakaotalk.

119.    On or about April 9, 2024, at or around 15:38, Defendant Koh provided Monroe College's purported student account information to Mr. Lim via Kakaotalk.

120.    Subsequently, Defendant Koh once again informed Mr. Lim that his enrollment in Monroe College had some issues and that he would not be able to attend Monroe College.

121.    Mr. Lim could not attend his graduate school program for the Spring 2024 semester at Monroe College.

122.    Defendant Koh stated that there is a partnership agreement between AY Study and Arizona State University and suggested that Mr. Lim consider transferring to Arizona State University.

123.    Because Mr. Lim had no other options at the time, he decided to apply for Arizona State University's graduate school program(s).

124.    On or about April 29, 2024, at or around 17:01, Defendant Koh, via Kakaotalk, falsely represented that Mr. Lim got admitted to Arizona State University to study in the Master of Business Administration program in the W.P. Carey School of Business for the Summer 2024 semester and provided purported acceptance letter, dated April 29, 2024, and scholarship letter from Arizona State University.

125.    On or about May 7, 2024, at or around 13:54, Defendant Koh provided Mr. Lim's I-20 purportedly issued by Arizona State University to Mr. Lim via Kakaotalk.

126.    On or about May 13, 2024, at or around 13:06, Defendant Koh provided Arizona State University's purported student portal information to Mr. Lim via Kakaotalk.

127.    On or about May 14, 2024, at or around 19:48, Defendant Koh provided Arizona State University's purported Zoom academic advisement link to Mr. Lim via Kakaotalk.

128.    On or about May 16, 2024, at or around 15:01, Defendant Koh provided Arizona State University's purported online course policy to Mr. Lim via Kakaotalk.

129.    On or about May 17, 2024, at or around 15:45, Defendant Koh, via Kakaotalk, once again falsely represented to Mr. Lim that Arizona State University was having some issues with its internal network system, and for that reason, Mr. Lim would not be able to access his courses and provided a purported letter from Arizona State University, dated May 17, 2024.

130.    On or about May 22, 2024, at or around 7:22, Defendant Koh provided a purported email from Arizona State University, falsely representing that Mr. Lim was in good standing status at Arizona State University as of May 21, 2024.

131.    Mr. Lim began to have doubts on the information provided by, and the representations made by, Defendants pertaining to his admission status and the alleged internal network issues each and every school had; thus, Mr. Lim contacted each school – Pace University, Mercy University, Monroe College, and Arizona State University – directly to ascertain his admission status and what issues those schools were having since September 2023 until May 2024.

132.    When Mr. Lim contacted said schools' admissions offices, those schools responded that they had no records of Mr. Lim ever getting admitted to their ESL or graduate school programs and that there were no records of any I-20 issuances or transfers.

133.    When Mr. Lim contacted said schools' admissions offices, those schools responded that they never had any internal network issues.

134.    By contacting said schools directly, Mr. Lim discovered that he was never admitted to any of those schools, those schools never issued I-20s for his anticipated full-time ESL or graduate school program(s), and the acceptance letters, letters and emails explaining internal network issues and containing apologies, the I-20s provided by Defendants, and all other

information pertaining to scholarship agreement, compensation agreement, course registration materials, student portal login credentials, meeting with advisors information, and Zoom links provided by Defendants were all forged, fake documents and information created by Defendants.

135.    When Mr. Lim personally visited and/or contacted each of those schools, each and every school denied ever issuing acceptance letters to Mr. Lim and approving and issuing I-20s to Mr. Lim.

136.    Those schools stated that they had no information whatsoever pertaining to Mr. Lim and that Mr. Lim was never admitted to those schools.

137.    Those schools further stated that Mr. Lim's application(s) have never been submitted to them.

138.    Said schools also denied ever having email conversations with Defendants pertaining to Mr. Lim's admission and/or issuance of I-20s for Mr. Lim's attendance at said schools.

139.    After learning that all those representations made by Defendants were false, and all those letters, emails, and documents, including immigration documents, such as I-20s, were forged fake documents, Mr. Lim discovered that his immigration status in the U.S. was in jeopardy.

140.    Not only the purported acceptance letters, various other letters containing apologies, and email correspondences between Defendants and those schools were forged, fake documents, but the immigration documents – I-20s – were also counterfeited, fake documents, all created by Defendants.

141.    Further, when Mr. Lim contacted Edmond Wong, Esq. of Edmond Wong, PLLC regarding the lawsuit Defendants allegedly filed against Pace University, Mr. Wong denied ever being retained by Defendants, and he stated that he never filed any lawsuit against Pace University on behalf of anyone.

142.     It turned out that the copy of the complaint and other legal documents Defendants provided to Plaintiffs were also counterfeited, fake documents.

143.     Due to Defendants' pattern of fraudulent, deceptive conduct and behavior, Mr. Lim was not able to get admitted to his graduate school program(s) and wasted his valuable time and money, and his immigration status in the U.S. was in jeopardy.

144.     Mr. Lim had to retain an immigration attorney to rectify the issues and problems caused by Defendants' fraudulent, deceptive conduct and behavior, and he expended a substantial amount of money in order to revive his legal immigration status in the U.S.

145.     This situation left Mr. Lim financially depleted, emotionally distressed, and angry, looking for answers and accountability.

146.     Mr. Lim wasted his valuable time and money in pursuit of an education that turned out to be fraud and deception by Defendants.

147.     But for Defendants' deceptive and fraudulent conduct and behavior described in this Complaint, Mr. Lim would not have wasted his valuable time and money or otherwise been injured.

148.     Defendants intended to target and injure Mr. Lim by making a pattern of fraudulent misrepresentations and engaging in a pattern of racketeering activities described in this Complaint, and those violations led directly to Mr. Lim's injuries.

149.     The injury to Mr. Lim was reasonably foreseeable or anticipated as a natural consequence of Defendants' conduct and behavior described herein.

150.     As a direct and proximate result of Defendants' fraudulent, deceptive activities and business practices, Mr. Lim has suffered, and continues to suffer, financial damages, loss of valuable time and money, loss of educational and professional development, and severe emotional

distress, as Defendants have interrupted his life, stalled his educational development, and abused the trust of Mr. Lim seeking to launch his career.

Plaintiff Dong Gyu Noh

151.    In or about July 2023, Mr. Noh contacted AY Study in order to have a consultation regarding his anticipated study abroad program at a university in the U.S. for his graduate school program.

152.    Mr. Noh corresponded and met with Defendant Park and Defendant Koh on multiple occasions and discussed his eligibility for admission to a graduate school program in New York.

153.    Mr. Noh corresponded with Defendant Park on multiple occasions via email from July 10, 2023 to October 5, 2023, and via Kakaotalk from August 2, 2023 to June 3, 2024, regarding his anticipated study abroad program in the U.S.

154.    At Defendant Park's direction, Mr. Noh provided all the required documents and information, such as his resume, financial verification documents, undergraduate academic records, passport, and all other documents and information, including the service fees imposed by Defendants, necessary for completion of his application process and submission.

155.    Mr. Noh was enrolled in Campus Education as an F-1 International Student while his applications for graduate school programs were pending.

156.    On or about November 7, 2023, at or around 17:05, Defendant Park, via Kakaotalk, represented that he has spoken with Pace University and that Pace University will announce students' acceptance to it graduate school program the next day.

157.    On or about November 13, 2023, at or around 16:14, Defendant Park, via Kakaotalk, provided Pace University's purported scholarship agreement, dated November 13, 2023, for the

Spring 2024 semester for the Master of Science in Data Science program, congratulating Mr. Noh for his acceptance to Pace University.

158.    On or about November 13, 2023, at or around 16:14, Defendant Park, via Kakaotalk, also represented that he was able to get Mr. Noh a scholarship in the amount of $5,000 per year.

159.    On or about November 13, 2023, at or around 16:18, Defendant Park, via Kakaotalk, provided Pace University's purported Transfer Form and directed Mr. Noh to fill it out.

160.    On or about January 16, 2024, at or around 10:05, Defendant Park, via Kakaotalk, represented that the student portal credentials have not been issued by Pace University.

161.    Acting in concert with Defendant Park, in or about January 2024, Defendant Koh falsely represented that Mr. Noh got admitted to Pace University, Master of Science in Data Science program, for the Spring 2024 semester, and provided a purported acceptance letter, dated November 8, 2023, purportedly originated from Pace University.

162.    Acting in concert with Defendant Park, on or about January 18, 2024, at or around 15:00, Defendant Koh provided Pace University's purported student portal login credentials to Mr. Noh via email.

163.    Upon receiving the January 18, 2024 email from Defendant Koh, Mr. Noh corresponded with Defendant Park via Kakaotalk and inquired as to whether his accepted major was Computer Science as opposed to Data Science.

164.    On or about January 18, 2024, at or around 15:58, Defendant Park, via Kakaotalk, represented that Mr. Noh's accepted major was in fact Data Science, and not Computer Science, and forwarded the link for Pace University's graduate degree program catalog to Mr. Noh.

165.    On January 21, 2024, Mr. Noh tried to access the student portal, but he could not access it.

166.    Thus, when Mr. Noh contacted Defendant Park, via Kakaotalk, on that same day, Defendant Park, at or around 16:51, requested that Mr. Noh visit AY Study's office in Manhattan, New York, to discuss this issue.

167.    On or about January 22, 2024, at or around 16:22, Defendant Koh, via Kakaotalk, provided purported class schedules and names of professors to Mr. Noh, falsely representing that he corresponded with Pace University and changed Mr. Noh's class schedules.

168.    In response to Mr. Noh's inquiries and requests, Defendant Koh, on or about January 22, 2024, at or around 16:27, via Kakaotalk, stated that he was in contact with Pace University and that he will provide updated login credentials to Mr. Noh.

169.    On or about January 27, 2024, at or around 14:43, Defendant Koh, via Kakaotalk, provided a purported letter from Pace University apologizing for the delay in the start of Mr. Noh's Spring 2024 semester stating that the school had some unforeseen issues with its internal systems and offering $1,500 credit for Mr. Noh's next semester at Pace University.

170.    Said letter also contained purported new login credentials for the student portal.

171.    On January 27, 2024, Mr. Noh tried to access the student portal, but he was unable to access it.

172.    On or about January 31, 2024, at or around 11:14, Defendant Koh provided Pace University's purported acceptance letter to Mr. Noh via email, falsely representing that Mr. Noh has been accepted to Pace University.

173.    On or about January 31, 2024, at or around 11:14, Defendant Koh provided Mr. Noh's I-20 purportedly issued by Pace University to Mr. Noh via email, falsely representing that Mr. Noh's I-20 has been properly transferred to Pace University.

174.    Defendant Koh not only provided the purported acceptance letter from Pace University, but also provided Pace University's purported scholarship agreement and I-20 purportedly issued by Pace University.

175.    Relying on Defendant Koh's representation that he got admitted to Pace University's Data Science program, Mr. Noh materially changed his position by signing a lease agreement for his apartment in Bergen County, New Jersey, purchasing school materials and supplies for the upcoming semester, and getting ready to attend his graduate school program.

176.    Defendant Koh all of sudden informed Mr. Noh that his enrollment in Pace University's Data Science program had some issues and that he would not be able to attend the Spring 2024 semester at Pace University and provided a purported letter from Pace University.

177.    Said letter states that "[w]e would like to apologize for the delay in the start of your Spring 2024 semester.  We had some unforeseen issues with our internal systems and would like to sincerely apologize for the delay.  We would like to extend our apologies by offering a $1,500 credit good for your next semester here at Pace University."

178.    On or about January 31, 2024, at or around 21:09, Defendant Koh, via Kakaotalk, represented to Mr. Noh that he told Pace University that Mr. Noh will be transferring to a different school due to Pace University's delay.

179.    Defendant Koh falsely represented that because Pace University breached the partnership agreement with AY Study by not resolving the issues pertaining to Mr. Noh not being able to attend the Spring 2024 semester, and for that reason, Defendants filed a lawsuit against Pace University.

180.    Defendant Koh provided a copy of the purported complaint filed against Pace University, and other purported legal documents, such as power of attorney, falsely representing

that an attorney, named, Edmond Wong, Esq. of Edmond Wong, PLLC, filed a lawsuit on behalf of Defendants against Pace University.

181.    On or about April 29, 2024, at or around 17:01, Defendant Koh provided the purported complaint Defendants filed against Pace University to Mr. Noh via Kakaotalk.

182.    On or about May 1, 2024, at or around 10:17, Defendant Koh, via Kakaotalk, provided the purported complaint Defendants filed against Pace University, as well as other legal documents, such as power of attorney, to Mr. Noh, falsely representing that Defendants have filed a lawsuit against Pace University.

183.    Mr. Noh could not attend his graduate school program for the Spring 2024 semester at Pace University.

184.    In or about February 2024, Defendant Koh falsely represented that Mr. Noh got admitted to Mercy University and provided a purported acceptance letter, dated February 8, 2024.

185.    Defendant Koh not only provided the purported acceptance letter, but also provided I-20 purportedly issued by Mercy University.

186.    On or about February 8, 2024, at or around 17:06, Defendant Koh provided Mercy University's purported acceptance letter to Mr. Noh via Kakaotalk, falsely representing that Mr. Noh got accepted to Mercy University.

187.    On or about February 8, 2024, at or around 17:06, Defendant Koh, via Kakaotalk, falsely represented that he has requested that Mr. Noh's I-20 be transferred to Mercy University.

188.    On or about February 16, 2024, at or around 14:59, Defendant Koh, via Kakaotalk, falsely represented that he received an update from Mercy University and that Mr. Noh's I-20 has been cleared.

189.    On or about February 20, 2024, Defendant Noh, via Kakaotalk, provided purported student portal credentials to Mr. Noh.

190.    On February 21, 2024, when Mr. Noh tried to access the student portal, the system stated that no such account existed.

191.    On or about February 29, 2024, at or around 13:54, Defendant Koh, via Kakaotalk, falsely represented to Mr. Noh that Mr. Noh's I-20 has been issued by Mercy University.

192.    On or about March 2, 2024, at or around 18:38, Defendant Koh, via Kakaotalk, once again provided purported login credentials for the student portal to Mr. Noh.

193.    On March 3, 2024, when Mr. Noh tried to access the student portal, he could not access it.

194.    Each time Mr. Noh informed Defendant Koh of his inability to access the student portal, Defendant Koh falsely represented that the system had not been activated and that Mercy University's network system had some issues.

195.    Defendant Koh falsely represented to Mr. Noh that Mercy University will issue $1,500 scholarship, $2,000 in compensation, and waive the tuition for the Spring 2024 semester due to Mercy University's delay.

196.    Such representations were confirmed by Defendant Koh, via Kakaotalk, on or about March 12, 2024, at or around 16:30.

197.    On or about March 14, 2024, at or around 20:08, Defendant Koh provided Mr. Noh's I-20 purportedly issued by Mercy University to Mr. Noh via Kakaotalk, falsely representing that Mr. Noh's I-20 has been properly transferred to Mercy University.

198.    Subsequently, Defendant Koh once again informed Mr. Noh that his enrollment in Mercy University had some issues, and he would not be able to attend said program at Mercy University and provided a purported letter from Mercy University.

199.    Said letter offers full tuition scholarship and $5,000.00 additional compensation for delayed semester start for the Spring 2024 semester, full-time scholarship, and $10,000.00 compensation for the Fall 2024 semester.

200.    Said letter further states that "[o]nce again, on behalf of Mercy University, we apologize for the inconveniences caused.  While ideally, we would've wished for a smooth start, sometimes a rough journey can pave the way for a smoother path in the future."

201.    Mr. Noh could not attend his graduate school program for the Spring 2024 semester at Mercy University.

202.    In or about March 2024, Defendant Koh falsely represented that Mr. Noh got admitted to the Master of Science in Computer Science program at the King Graduate School of Monroe College for the Spring 2024 semester and provided a purported acceptance letter from Monroe College, dated March 27, 2024, and I-20 purportedly issued by Monroe College.

203.    On or about March 28, 2024, at or around 16:26, Defendant Koh provided Monroe College's purported acceptance letter to Mr. Noh via Kakaotalk, falsely representing that Mr. Noh got accepted to Monroe College.

204.    On or about March 28, 2024, at or around 16:47, Defendant Koh provided Mr. Noh's I-20 purportedly issued by Monroe College to Mr. Noh via Kakaotalk, falsely representing that Mr. Noh's I-20 has been properly transferred to Monroe College.

205.    On or about April 9, 2024, at or around 15:37, Defendant Koh provided purported instructions for logging into Monroe College's student portal to Mr. Noh via Kakaotalk.

206.    On or about April 12, 2024, at or around 14:43, Defendant Koh provided Monroe College's purported orientation information to Mr. Noh via Kakaotalk.

207.    On or about April 12, 2024, at or around 14:44, Defendant Koh provided Monroe College's purported Zoom meeting information to Mr. Noh via Kakaotalk.

208.    Subsequently, Defendant Koh once again informed Mr. Noh that his enrollment in Monroe College had some issues and that he would not be able to attend Monroe College.

209.    Defendant Koh represented that there is a partnership agreement between AY Study and Arizona State University and suggested that Mr. Noh consider transferring to Arizona State University.

210.    Because Mr. Noh had no other options at the time, he decided to apply for Arizona State University's graduate school program(s).

211.    Mr. Noh could not attend his graduate school program for the Spring 2024 semester at Monroe College.

212.    In or about April 2024, Defendant Koh falsely represented that Mr. Noh got admitted to Arizona State University to study in the Computer Science (MS) program in the Ira A. Fulton Schools of Engineering for the 2024 Summer semester and provided a purported acceptance letter from Arizona State University, dated April 29, 2024, and I-20 purportedly issued by Arizona State University.

213.    On or about April 29, 2024, at or around 17:01, Defendant Koh provided Arizona State University's purported acceptance letter to Mr. Noh via Kakaotalk, falsely representing that Mr. Noh got admitted to Arizona State University.

214.    On or about May 7, 2024, at or around 13:53, Defendant Koh provided Mr. Noh's I-20 purportedly issued by Arizona State University to Mr. Noh via Kakaotalk, falsely representing that Mr. Noh's I-20 has been properly transferred to Arizona State University.

215.    On or about May 13, 2024, at or around 13:06, Defendant Koh provided Arizona State University's purported student portal information to Mr. Noh via Kakaotalk.

216.    In or about May 2024, Defendant Koh once again informed Mr. Noh that Arizona State University was having some issues with its internal network system, and for that reason, Mr. Noh would not be able to access his courses and provided a purported letter from Arizona State University, dated May 17, 2024.

217.    On or about May 22, 2024, at or around 7:22, Defendant Koh provided a purported email from Arizona State University via email, falsely representing that Mr. Noh was in good standing status at Arizona State University as of May 21, 2024.

218.    Mr. Noh began to have doubts on the information provided by, and the representations made by, Defendants pertaining to his admission status and the alleged internal network issues each and every school had; thus, Mr. Noh contacted each school – Pace University, Mercy University, Monroe College, and Arizona State University – directly to ascertain his admission status and what issues those schools were having since January 2024 until May 2024.

219.    When Mr. Noh contacted said schools' admissions offices, those schools responded that they had no records of Mr. Noh ever getting admitted to their graduate school programs and that there were no records of I-20 transfer(s).

220.    When Mr. Noh contacted said schools' admissions offices, those schools responded that they never had any internal network issues.

221.    By contacting said schools directly, Mr. Noh discovered that he was never admitted to any of those schools, those schools never issued I-20s for his anticipated full-time graduate school program(s), and the admission letters, letters and emails explaining internal network issues and containing apologies, and I-20s were all forged, fake documents created by Defendants, and all other information pertaining to scholarship agreement, compensation agreement, course registration materials, student portal login credentials, meeting with advisors information, and Zoom links provided by Defendants were all forged, fake documents and information created by Defendants.

222.    Each and every school denied ever issuing acceptance letters to Mr. Noh and approving and issuing I-20s to Mr. Noh.

223.    Those schools stated that they had no information whatsoever pertaining to Mr. Noh and that Mr. Noh was never admitted to those schools.

224.    Those schools further stated that Mr. Noh's application(s) have never been submitted to them.

225.    Said schools also denied ever having email conversations with Defendants pertaining to Mr. Noh's admission and issuance of I-20s for Mr. Noh's attendance at said schools.

226.    After learning that all those representations made by Defendants were false, and all those letters, emails, and documents, including immigration documents, such as I-20s, were forged fake documents, Mr. Noh realized that his immigration status in the U.S. was in jeopardy.

227.    Not only the purported acceptance letters, various other letters containing apologies, and email correspondences between Defendants and those schools were forged, fake documents, but the immigration documents, I-20s, were also forged, fake documents, all created by Defendants.

228.    Further, when Mr. Noh contacted Edmond Wong, Esq. of Edmond Wong, PLLC regarding the lawsuit Defendants allegedly filed against Pace University, Mr. Wong denied ever being retained by Defendants, and he stated that he never filed any lawsuit against Pace University on behalf of anyone.

229.    It turned out that the copy of the complaint and other legal documents Defendants provided to Plaintiffs were also fake, forged documents.

230.    Due to Defendants' pattern of fraudulent, deceptive conduct and behavior, Mr. Noh was not able to get admitted to his graduate school program(s) and wasted his valuable time and money, and his immigration status in the U.S. was in jeopardy.

231.    Mr. Noh had to retain an immigration attorney to rectify the issues and problems caused by Defendants' fraudulent, deceptive conduct and behavior, and he expended a substantial amount of money in order to revive his legal immigration status in the U.S.

232.    This situation left Mr. Noh financially depleted, emotionally distressed, and angry, looking for answers and accountability.

233.    Mr. Noh wasted his valuable time and money in pursuit of an education that turned out to be fraud and deception by Defendants.

234.    But for Defendants' deceptive and fraudulent conduct and behavior described in this Complaint, Mr. Noh would not have wasted his valuable time and money or otherwise been injured.

235.    Defendants intended to target and injure Mr. Noh by making a pattern of fraudulent misrepresentations and engaging in a pattern of racketeering activities described in this Complaint, and those violations led directly to Mr. Noh's injuries.

236.    The injury to Mr. Noh was reasonably foreseeable or anticipated as a natural consequence of Defendants' conduct and behavior described herein.

237.    As a direct and proximate result of Defendants' fraudulent, deceptive activities and business practices, Mr. Noh has suffered, and continues to suffer, financial damages, loss of valuable time and money, loss of educational and professional development, and severe emotional distress, as Defendants have interrupted his life, stalled his educational development, and abused the trust of Mr. Noh seeking to launch his career.

## FIRST CAUSE OF ACTION
### (Federal Civil RICO, 18 U.S.C. § 1962[c])

238.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

239.    Defendants violated RICO, and Plaintiffs were injured as a result.

240.    Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

241.    Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the preceding paragraphs, and as further described below.

242.    **The Enterprise.** Defendant Park and Defendant Koh, together with: (1) AY Study; (2) one or more officers and/or directors of AY Study; (3) one or more former officers and/or directors of AY Study; (4) one or more employees of AY Study; and/or (5) Does 1 through 50, inclusive, form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity.

243.    Alternatively, Defendant Park, together with AY Study, form an association-in-fact within the meaning of 18 U.S.C. § 1961(4).

244.    Alternatively, Defendant Koh, together with AY Study, form an association-in-fact within the meaning of 18 U.S.C. § 1961(4).

245.    Defendant Park and Defendant Koh formed AY Study together as shareholders, directors, officers, and/or members in that they have interpersonal relationships or connections of operating AY Study acting in concert with each other.  Alternatively, AY Study and Defendant Park hired Defendant Koh as a general manager overseeing the operation of AY Study.

246.    Alternatively, Defendant Park and Defendant Koh form an association-in-fact within the meaning of 18 U.S.C. § 1961(4).

247.    Alternatively, AY Study itself constitutes a separate enterprise within the meaning of 18 U.S.C. § 1961(4).

248.    The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity.  There may also be other members of the enterprise who are unknown at this time.

249.    Each enterprise has engaged in, and their activities have affected, interstate commerce, as Defendants' fraudulent and deceptive conduct and activities affected several states, such as New York, New Jersey, and Arizona.

250.    **Pattern of Racketeering Activity.** Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c).  The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise.  Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

251.    Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

252.    The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims, and method of commission.  Further, the acts of racketeering by Defendants have been continuous.  There was repeated conduct during a period of time beginning in approximately January 2023 and continued until May 2024, and there is a continued threat of repetition of such conduct.

253.    The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity.

254.    Plaintiffs specifically allege that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

255.    **Predicate Act: Fraud and Misuse of Visas, Permits, and Other Documents in Violation of 18 U.S.C. § 1546**.  18 U.S.C. § 1546(a) provides that "[w]hoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized say or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or

statement, or to have been otherwise procured by fraud or unlawfully obtained" "[s]hall be fined under this title or imprisoned not more than… 15 years…, or both." 18 U.S.C. § 1546(a).

256.    Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1546 on at least eight (8) different occasions in that they knowingly forged, counterfeited, altered, or falsely made Plaintiffs' I-20 documents to defraud Plaintiffs, inducing them to believe that the I-20s that Defendants forged, counterfeited, altered, falsely made, and/or provided to Plaintiffs were legitimate documents issued and approved by the U.S. Government, via SEVIS (Student and Exchange Visitor Information System), and printed and signed by the school officials that Plaintiffs purportedly got admitted to, and that Plaintiffs maintained a valid, legal immigration status in the United States.

257.    In particular, all of the I-20s Defendants provided to Plaintiffs were counterfeited, fake immigration documents created by Defendants in an attempt to induce Plaintiffs to believe that they got admitted to certain graduate school programs and that their immigration status in the U.S. has been properly maintained.  Defendants not only created counterfeited, fake I-20s, but also made misrepresentations that Plaintiffs' I-20s were properly transferred between or among various schools to which Plaintiffs were never admitted.

258.    When Plaintiffs visited and/or contacted those schools to which Plaintiffs purportedly got admitted, the school officials confirmed that they never approved, issued, or signed those I-20s, as Plaintiffs never got admitted to those schools as full-time students, rendering Plaintiffs ineligible to receive such I-20s.

259.    **Predicate Act: Reproduction of Naturalization or Citizenship Papers in Violation of 18 U.S.C. § 1426**.  18 U.S.C. § 1426(a) provides that "[w]hoever falsely makes, forges, alters or counterfeits any oath, notice, affidavit, certificate of arrival, declaration of

intention, certificate or documentary evidence of naturalization or citizenship or any order, record, signature, paper or proceeding or any copy thereof, required or authorized by any law relating to naturalization or citizenship or registry of aliens" "[s]hall be fined under this title or imprisoned not more than… 15 years…, or both." 18 U.S.C. § 1426(a).

260.    Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1426 on at least eight (8) different occasions in that they falsely made, forged, altered, or counterfeited I-20s and school officials' signatures contained therein as well as other information, such as SEVIS ID numbers, listed on each of the I-20s falsely created, forged, and counterfeited by Defendants.

261.    In particular, Defendants knowingly made, forged, altered, or counterfeited Plaintiffs' I-20 documents to defraud Plaintiffs, inducing them to believe that they got admitted to certain graduate school programs and that the I-20s that Defendants created and provided to Plaintiffs were legitimate documents issued and approved by the U.S. Government, via SEVIS (Student and Exchange Visitor Information System), and printed and signed by the school officials that Plaintiffs purportedly got admitted to, and that Plaintiffs maintained a valid, legal immigration status in the United States.

262.    **Predicate Act: Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information in Violation of 18 U.S.C. § 1028**.  18 U.S.C. § 1028 provides that "[w]hoever, in a circumstance described in subsection (c) of this action… "knowingly and without lawful authority produces an identification document, authentication features, or a false identification document" or "knowingly possesses with intent to use unlawfully or transfer unlawfully five or more identification documents…, authentication features, or false identification documents" shall be fined or imprisoned for not more than 15 year, or both, if the offense is the "production or transfer of an identification document, authentication

feature, or false identification document that is or appears to be… an identification document or authentication feature issued by or under the authority of the United States" or "the production or transfer of more than five identification documents, authentication features, or false identification documents…" 18 U.S.C. §§  1028(a)(1), (a)(3), (b)(1)(A)(i), (b)(1)(B).

263.    Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1028 on at least eight (8) different occasions in that they knowingly and without lawful authority created and produced[3] authentication feature[4] of the I-20s that can only be issued, approved, and produced by the U.S. Government via SEVIS database.

264.    In creating and producing forged, fake I-20s, Defendants knowingly and without lawful authority created and produced authentication features, such as OMB Numbers[5], SEVIS ID Number, and each school's Designated School Official's printed name and signature in at least eight (8) different I-20s counterfeited by Defendants.

265.    Defendants further committed acts constituting indictable offenses under 18 U.S.C. § 1028 in that they knowingly possessed with intent to use unlawfully or transfer unlawfully at least eight (8) different authentication features in each of those eight different I-20s purportedly issued and approved by the U.S. Government.  Defendants did in fact use those authentication features to defraud Plaintiffs.

266.    In creating and producing forged, fake acceptance and apology letters, as if those letters were originated from the schools mentioned above, Defendants knowingly and without

---

[3] The term "produce" includes alter, authenticate, or assemble. 18 U.S.C. § 1028(d)(9).

[4] The term "authentication feature" means any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified. 18 U.S.C. § 1028(d)(1).

[5] OMB Numbers are form and information collection numbers assigned by the Office of Management and Budget.

lawful authority created and produced authentication features, such as schools' logos and trademarks and school officials' printed names and signatures, on at least sixteen (16) different occasions.

267.    Additionally, in creating and producing forged, fake complaint and power of attorney purportedly prepared and filed by an attorney, named, Edmond Wong, Esq., Defendants knowingly and without lawful authority created and produced authentication features, such court case number and attorney Edmond Wong's printed name, signature, and notary stamp.

268.    Defendants further committed acts constituting indictable offenses under 18 U.S.C. § 1028 in that they knowingly possessed with intent to use unlawfully or transfer unlawfully at least sixteen (16) different authentication features in each of those sixteen (16) school acceptance and apology letters purportedly originated from various colleges and universities.  Defendants did in fact use those letters to defraud Plaintiffs.

269.    **Predicate Act: Use of Wires to Defraud Plaintiffs in Violation of 18 U.S.C. § 1343**.  18 U.S.C. § 1343 provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1343.

270.    Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1343 on multiple occasions in that they devised or intended to devise a scheme or artifice to defraud Plaintiffs by means of false and fraudulent pretenses, representations, or promises for obtaining Plaintiffs' money or property.

271.     For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents, such as counterfeited, fake I-20s and school acceptance letters, school apology letters, and scholarship agreement(s) as if those documents and letters originated from the U.S. Government and various schools across the U.S. by the use of the wires, to wit: emails and Kakaotalk mobile messaging platform.

272.     For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents, such as forged, fake complaint, purportedly filed against Pace University, and other legal documents, such as power of attorney, as if those documents were legitimate legal documents by the use of the wires or received such therefrom.

273.     Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs, and signals, such as counterfeited, fake I-20s and school acceptance letters, school apology letters, scholarship agreement(s), and complaint and other legal documents purported to be legitimate documents. The acts of Defendants set forth above were done with the knowledge that the use of the wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

274.     Defendants' use of the wire communications was in furtherance of a larger scheme to defraud Plaintiffs, to wit: induce Plaintiffs to pay money for Defendants' purported service fees to Defendants' own benefits and to deceive and defraud Plaintiffs to believe that they were admitted to various different schools' graduate school programs and that their immigration status in the U.S. has been properly maintained.

275.    Defendants carried out their scheme in different States including, but not limited to, New York, New Jersey, and Arizona, and could not have done so unless they used interstate wires.

276.    In furtherance of their scheme alleged herein, Defendants communicated among themselves and with Plaintiffs in furtherance of the scheme to defraud Plaintiffs. These communications were typically transmitted by wire (i.e., electronically). Defendants also transmitted or caused to be transmitted by wire, upon information and belief, communications among Defendants and/or with unknown officers, directors, and/or agents in furtherance of their scheme alleged herein.

277.    Specifically, AY Study, Mr. Park, and Mr. Koh used wire to transmit a number of forged and counterfeited documents and letters, containing false pretenses and misrepresentations, to Plaintiffs to further their scheme to defraud Plaintiffs. Defendants also communicated by wire to facilitate disseminating forged, fake immigration documents, such as I-20s, and school acceptance letters, apology letters, scholarship agreement(s), and complaint and other legal documents to Plaintiffs.

278.    In addition, in furtherance of their scheme, Defendants used wire to induce Plaintiffs, who were/are located in a number of different states, to believe that they were admitted to various schools' graduate school programs and that the I-20s purportedly approved and issued by the U.S. Government, via SEVIS database, were legitimate immigration documents necessary for Plaintiffs to maintain a legal immigration status in the U.S.

279.    Defendants' shared objective was, and is, to induce Plaintiffs to pay money or fees imposed by Defendants and to induce them to believe that they were admitted to various schools' graduate school programs, the I-20s Defendants created and provided to Plaintiffs were legitimate immigration documents, and Plaintiffs' immigration status was properly maintained.

280.    Plaintiffs reasonably and justifiably relied upon Defendants' false representations, false pretenses, and deceptive communications.

281.    But for Defendants' deceptive and fraudulent conduct and behavior described in this Complaint, Plaintiffs would not have wasted his valuable time and money or otherwise been injured.

282.    Defendants intended to target and injure Plaintiffs by making a pattern of fraudulent misrepresentations and engaging in a pattern of racketeering activities described in this Complaint, and those violations led directly to Plaintiffs' injuries.

283.    The injury to Plaintiffs was reasonably foreseeable or anticipated as a natural consequence of Defendants' conduct and behavior described herein.

284.    As a direct and proximate result of Defendants' fraudulent, deceptive activities and business practices, Plaintiffs have suffered, and continue to suffer, financial damages, loss of valuable time and money, loss of educational and professional development, and severe emotional distress, as Defendants have interrupted their lives, stalled their educational development, and abused the trust of Plaintiffs seeking to launch their career.

285.    Plaintiffs have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

286.    **Continuity of Conduct**.  Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiffs, constituted a continuous course of conduct spanning a period from approximately January 2023 to May 2024, which was intended to damage Plaintiffs financially and their legal immigration status in the U.S., and through false representations, fraud, deceit, and other improper and unlawful means.  Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5).

287.     Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. § 1962(c).

288.     Defendant Park and Defendant Koh, as AY Study's principals, shareholders, directors, members, general managers, officers, or managing members, each conducted and participated in the conduct of the affairs of the alleged enterprises under the name of AY Study through a pattern of racketeering activities of creating, producing, forging, counterfeiting, and disseminating multiple fake immigration documents and acceptance letters, apology letters, school academic programs, tuition information, scholarship agreements, and other relevant information and documents pertaining to Plaintiffs' purported admissions to various schools' graduate school programs.

289.     Defendants not only created, produced, forged, counterfeited, disseminated, and wired multiple counterfeited, fake immigration documents, as if they were originated from the U.S. Government, but also created, produced, forged, counterfeited, disseminated, and wired multiple counterfeited, fake documents, as if those documents were originated from various schools in the U.S.

290.     As such, there is a threat of continuing criminal activity extending indefinitely into the future.  Although Defendants are engaged in the professional study abroad consulting business, a business that is not criminal in nature, the predicates described herein are a regular way of conducting Defendants' business or that the nature of the predicate acts themselves implies a threat of continuing activity.

291.     The means employed by Defendants with respect to Plaintiffs and other students is the same, and that Defendants were, and continue to be, engaged in a scheme defrauding students

who wish to attend college and/or graduate school in the U.S. by creating, producing, forging, counterfeiting, disseminating, and wiring counterfeited, fake immigration documents, acceptance letters, apology letters, scholarship agreements, and email correspondences.

292.    Upon information and belief, there is a number of other students, who were victimized by Defendants' schemes, and that Defendants have perpetrated similar schemes upon, and defrauded, other students who wished to attend college or graduate school program(s) in the U.S.

293.    Because Defendants have been continuously operating the alleged enterprise(s) to date, there is a threat of continuing criminal activity extending indefinitely into the future creating more student victims similar to Plaintiffs.

294.    The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused, and continue to cause, injuries to Plaintiffs in their person and property. Plaintiffs seek an award of damages in compensation for, among other things, the millions of dollars, in aggregate, for their loss of educational opportunity and development, professional development, valuable time, and substantial amount of money spent and expended for entering the U.S., remaining in the U.S., and getting ready to start their education as international students, and substantial amount money spent and expended for rectifying the issues pertaining to their legal immigration status, causing long-term financial harm, all of which were caused by Defendants.

295.    Plaintiffs accordingly seek an award of three (3) times the damages they sustained, as well as punitive damages, and the recovery of reasonable attorneys' fees and costs, expenses, and disbursements incurred, and any other relief as authorized by statute.

## SECOND CAUSE OF ACTION
### (Conspiracy to Violate Federal Civil RICO, 18 U.S.C. § 1962[d])

296.     Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

297.     In violation of 18 U.S.C. § 1962(d), Defendants, and each of them, knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged above.

298.     The conspiracy commenced at least as early as January 2023.

299.     The conspiracy's purpose was to defraud Plaintiffs to their own benefit and to facilitate the payment of the purported service fees in an effort to defraud Plaintiffs.

300.     The conspiracy's purpose was to defraud Plaintiffs inducing them to believe that they got admitted to various graduate school programs and that their immigration status in the U.S. has been properly maintained.

301.     Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included, but are not limited to, making misrepresentations on multiple occasions that Plaintiffs got admitted to various schools' graduate school programs, making misrepresentations on multiple occasions that those schools had some internal network issues, and for that reason, Plaintiffs would not be able to attend those schools, making misrepresentations on multiple occasions that Plaintiffs' I-20s were properly transferred between or among various schools, making misrepresentations on multiple occasions that Plaintiffs' immigration status has been properly maintained because Plaintiffs got admitted to various schools and that their I-20s were properly transferred, and making, forging, counterfeiting, producing, and disseminating fake I-20s as if those I-20s were approved and issued by the U.S. Government, and making, forging, counterfeiting, producing, and disseminating fake acceptance

letters, apology letters, and scholarship agreements as if those letters and documents were originated from Pace University, Mercy University, Monroe College, and Arizona State University.

302.    Even if some of Defendants did not agree to harm Plaintiffs specifically, the purpose of the acts they engaged in was to advance the overall objects of the conspiracy, and the harm to Plaintiffs was a reasonably foreseeable consequence of Defendants' actions.

303.    Plaintiffs have been injured in their business and property by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d).  The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiffs in their business and property.  Plaintiffs seek an award of damages in compensation for, among other things, the millions of dollars, in aggregate, for their loss of educational opportunity and development, professional development, valuable time, legal immigration status, and substantial amount of money spent and expended for remaining in the U.S., and getting ready to start their education as international students, causing long-term financial harm, all of which were caused by Defendants.

304.    Plaintiffs further seek an award of three (3) times the damages they sustained, as well as punitive damages, and the recovery of reasonable attorneys' fees and costs, expenses, and disbursements incurred, and any other relief as authorized by statute.

### THIRD CAUSE OF ACTION
**(Fraudulent Misrepresentation)**

305.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

306.    Defendants made false representations on multiple occasions that: Plaintiffs got admitted to various schools' graduate school programs; those schools had some internal network issues, and for that reason, Plaintiffs would not be able to attend those schools; Plaintiffs' I-20s

were properly transferred between or among various schools; and Plaintiffs' immigration status has been properly maintained because Plaintiffs got admitted to various schools and that their I-20s were properly transferred.

307.    In making the aforementioned misrepresentations, Defendants made, forged, counterfeited, produced, and disseminated fake I-20s as if those I-20s were approved and issued by the U.S. Government, and made, forged, counterfeited, produced, and disseminated fake acceptance letters, apology letters, and scholarship agreements as if those letters and documents were originated from Pace University, Mercy University, Monroe College, and Arizona State University.

308.    Defendants knew said representations were false at the time they were made.

309.    Despite the fact that the Defendants knew said representations were false, Defendants made those representations to deceive Plaintiffs.

310.    Plaintiffs reasonably believed those representations to be true, acted in reliance upon them, and were deceived.  Plaintiffs materially changed their position in reliance of the representations made by Defendants by entering and remaining in the U.S., getting ready to be enrolled in a graduate school program, signing leases for their apartments in New York and New Jersey, and purchasing school materials and supplies getting ready to attend their graduate school programs.

311.    Upon information and belief, there was an agreement among Defendants to defraud Plaintiffs and fraudulently induce them to pay money to Defendants, remain in the U.S., remain as Defendants' clients, and expend substantial amount of money getting ready to attend graduate school program(s).

312.    Defendants engaged in overt acts in furtherance of this agreement when they planned, organized, and participated in a pattern of racketeering activities described in this Complaint.

313.    Upon information and belief, Defendants acted in concert in fostering and promoting this fraudulent scheme in order to defraud Plaintiffs and cause injury to Plaintiffs, or Defendants knew that this injury was substantially certain to happen.

314.    As a direct and proximate result of Defendants' false representations and fraudulent inducement, Plaintiffs were injured and suffered significant losses including, but not limited to, their loss of educational opportunity, professional development, valuable time, legal immigration status, and substantial amount of money spent and expended for entering and remaining in the U.S., and getting ready to launch their academic career as international students, causing long-term financial harm, all of which were caused by Defendants.

315.    Plaintiffs seek an award of damages in compensation for, *inter alia*, the millions of dollars, in aggregate, for their loss of educational opportunity and development, professional development, valuable time, legal immigration status, and substantial amount of money spent and expended for entering and remaining in the U.S., and getting ready to launch their academic career, causing long-term financial harm, all of which were caused by Defendants.

316.    Plaintiffs further seek punitive damages and the recovery of reasonable attorneys' fees and costs, expenses, disbursements incurred, and any other relief as the Court deems just, proper, and equitable, based on the extreme and outrageous conduct of Defendants, as explained above.

## FOURTH CAUSE OF ACTION
### (Fraudulent Concealment)

317.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

318.    Defendants made false representations on multiple occasions that: Plaintiffs got admitted to various schools' graduate school programs; those schools had some internal network issues, and for that reason, Plaintiffs would not be able to attend those schools; Plaintiffs' I-20s were properly transferred between or among various schools; and Plaintiffs' immigration status has been properly maintained because Plaintiffs got admitted to various schools and that their I-20s were properly transferred.

319.    In making the aforementioned misrepresentations, Defendants made, forged, counterfeited, produced, and disseminated fake I-20s as if those I-20s were approved and issued by the U.S. Government, and made, forged, counterfeited, produced, and disseminated fake acceptance letters, apology letters, and scholarship agreements as if those letters and documents were originated from Pace University, Mercy University, Monroe College, and Arizona State University.

320.    Defendants knew said representations were false at the time they were made.

321.    Despite the fact that Defendants knew said representations were false, Defendants made those representations to deceive Plaintiffs and have them make required payments for fees imposed by Defendants, so that Defendants could continue to receive and benefit from having Plaintiffs remain as their clients.

322.    Despite the fact that Defendants knew said representations were false, Defendants made those representations to deceive Plaintiffs inducing them to believe that they got admitted to

various schools' graduate school programs and that their immigration status in the U.S. has been properly maintained.

323.    Defendants willfully and fraudulently concealed the fact that Defendants did not undertake the tasks that they were required to undertake – providing consultation services, providing and assisting admission application process, providing essay review and edit services, submitting applications to schools on behalf of Plaintiffs, submitting additional documents and information to schools on behalf of Plaintiffs, providing acceptance letters and notices to Plaintiffs on behalf of schools, providing admission support, administering I-20 and visa issuances, and providing dormitory support.

324.    Defendants willfully and fraudulently concealed the fact that Defendants never submitted admission applications to any school.

325.    Defendants willfully and fraudulently concealed the fact that Defendants never got admitted to any school.

326.    Defendants willfully and fraudulently concealed the fact that the I-20s that Defendants provided to Plaintiffs were fake documents that were made, forged, counterfeited, produced, and disseminated by Defendants.

327.    Defendants willfully and fraudulently concealed the fact that the acceptance letters, apology letters, and scholarship agreements that Defendants provided to Plaintiffs were fake documents that were made, forged, counterfeited, produced, and disseminated by Defendants.

328.    Defendants willfully and fraudulently concealed the fact that the complaint they allegedly filed against Pace University was a forged, fake document.

329.    Defendants willfully and fraudulently concealed the fact that the power of attorney Defendants provided to Plaintiff was a forged, fake document.

330.    Defendants willfully and fraudulently concealed the fact that the student portal information, tuition payment information, scholarship agreements, Zoom links, and other relevant information pertaining to Plaintiffs' admission to various graduate school programs were all fake documents and information.

331.    Defendants had a duty to disclose material information concerning Plaintiffs' acceptance/admission status with schools, status of their I-20s, and their status as F-1 International Student.

332.    Defendants had a duty to disclose to Plaintiffs any and all relevant information concerning the tasks performed by Defendants on behalf of Plaintiffs pertaining to Plaintiffs' acceptance/admission status with schools, status of their I-20s, and status of their F-1 International Student.

333.    Defendants failed to disclose this information to Plaintiffs.

334.    Plaintiffs reasonably believed the representations made by Defendants to be true, acted in reliance upon them, and were deceived.  Plaintiffs materially changed their position in reliance upon the representations made by Defendants.  Plaintiffs' reliance was objectively reasonable; they trusted that Defendants would be in a position to know Plaintiffs' acceptance/admission status with schools, status of their I-20s, and status of their F-1 International Student because Defendants are professional education and study abroad consultants.

335.    Plaintiffs were misled by Defendants' conduct of concealing this material information.

336.    Upon information and belief, there was an agreement among the Defendants to defraud Plaintiffs and fraudulently conceal material information from Plaintiffs.

337. Defendants engaged in overt acts in furtherance of this agreement when they planned, organized, and participated in a pattern of racketeering activities described in this Complaint, and when they willfully concealed material information from Plaintiffs.

338. Upon information and belief, Defendants acted in concert in fostering and promoting this fraudulent scheme in order to defraud Plaintiffs and cause injury to Plaintiffs, or Defendants knew that it was substantially certain to happen.

339. As a direct and proximate result of Defendants' false representations, and Defendants' willful failure to disclose material information, Plaintiffs were injured and suffered significant losses including, but not limited to, their loss of educational opportunity and development, professional development, valuable time, legal immigration status, and substantial amount of money spent and expended for entering and remaining in the U.S., and getting ready to launch their academic career as international students, causing long-term financial harm, all of which were caused by Defendants.

340. Plaintiffs seek an award of damages in compensation for, *inter alia*, the millions of dollars, in aggregate, for their loss of educational opportunity and development, professional development, valuable time, legal immigration status, and substantial amount of money spent and expended for entering and remaining in the U.S., and getting ready to launch their academic career, causing long-term financial harm, all of which were caused by Defendants.  Plaintiffs further seek punitive damages and the recovery of reasonable attorneys' fees and costs, expenses, and disbursements incurred, and any other relief as the Court deems just, proper, and equitable, based on the extreme and outrageous conduct of Defendants, as explained above.

## FIFTH CAUSE OF ACTION
### (Aiding and Abetting Fraud)

341.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

342.    Upon information and belief, each of Defendants knew and/or recklessly disregarded that other Defendants were engaging in unlawful conduct.

343.    As alleged in great length above, a pattern of racketeering activities, as well as actual fraud, both fraudulent inducement and fraudulent concealment, existed.

344.    Upon information and belief, each of Defendants knew the existence of the fraud and ongoing racketeering activities.

345.    Upon information and belief, each of Defendants provided substantial assistance to other Defendants in making, forging, counterfeiting, producing, and disseminating fake I-20s and fake acceptance letters, apology letters, and scholarship agreements to Plaintiffs, and concealed material information from Plaintiffs, in furtherance of the fraud.

346.    Upon information and belief, each of Defendants affirmatively assisted, or by virtue of failing to act when requiring to do so, enabled the fraud to proceed.

347.    Upon information and belief, each of Defendants shared in the proceeds or otherwise benefitted from their assistance.

348.    As a direct and proximate result of Defendants' conduct, Plaintiffs were injured and suffered significant losses including, but not limited to, their loss of educational opportunity and development, professional development, valuable time, legal immigration status, and substantial amount of money spent and expended for entering and remaining in the U.S., and getting ready to launch their academic career as international students, causing long-term financial harm, all of which were caused by Defendants.

349.    The conduct of each of Defendants was wanton, willful, intentional, malicious, and/or reckless.

350.    The actions of Defendants directly and proximately caused Plaintiffs' injury.

351.    Plaintiffs seek an award of damages in compensation for, among other things, the millions of dollars, in aggregate, for their loss of educational opportunity and development, professional development, valuable time, legal immigration status, and substantial amount of money spent and expended for entering and remaining in the U.S., and getting ready to launch their academic career, causing long-term financial harm, all of which were caused by Defendants. Plaintiffs further seek punitive damages and the recovery of reasonable attorneys' fees and costs, expenses, and disbursements incurred, and any other relief as the Court deems just, proper, and equitable, based on the extreme and outrageous conduct of Defendants, as explained above.

**WHEREFORE**, the Plaintiffs pray for judgment against the Defendants as follows:

A. On the First Cause of Action, a judgment awarding compensatory damages in an amount to be determined at trial, but not less than $20,000,000.00 in aggregate, treble damages, punitive damages, reasonable attorneys' fees and costs, expenses, and disbursements, and any other relief that the Court deems just and proper and as authorized by statute;

B. On the Second Cause of Action, a judgment awarding compensatory damages in an amount to be determined at trial, but not less than $20,000,000.00 in aggregate, treble damages, punitive damages, reasonable attorneys' fees and costs, expenses, and disbursements, and any other relief that the Court deems just and proper and as authorized by statute;

C. On the Third Cause of Action, a judgment awarding compensatory damages in an amount to be determined at trial, but not less than $20,000,000.00 in aggregate, punitive damages, reasonable attorneys' fees and costs, expenses, and disbursements, and any other relief that the Court deems just and proper and as authorized by statute;

D. On the Fourth Cause of Action, a judgment awarding compensatory damages in an amount to be determined at trial, but not less than $20,000,000.00 in aggregate, punitive damages, reasonable attorneys' fees and costs, expenses, and disbursements, and any other relief that the Court deems just and proper and as authorized by statute;

E. On the Fifth Cause of Action, a judgment awarding compensatory damages in an amount to be determined at trial, but not less than $20,000,000.00 in aggregate, punitive damages, reasonable attorneys' fees and costs, expenses, and disbursements, and any other relief that the Court deems just and proper and as authorized by statute; and

F. Awarding such other, further, and different relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: July 22, 2024
New York, New York

**AHNE & JI, LLP**

/s/ Younghoon Ji
By: Younghoon Ji, Esq.
*Attorneys for Plaintiffs*
45 East 34th Street, 5th Floor
New York, New York 10016
Tel.: (212) 594-1035
Email: yji@ahnejillp.com